U.S. COURT OF APPEALS
RECEIVED
SEP 06 2022
FIFTH CIRCUIT

In The
United States Court Of Appeals
For The Fifth Circuit

# CHAZ PINKSTON
Plaintiff-Appellant

v.

Management & Training Corporation
Defendant-Appellee

On Appeal from the United States District Court
for the Southern District Of Mississippi
Case No. 5:18-CV-103

Plaintiff's Reply Brief
CHAZ PINKSTON, Appellant

Chaz Pinkston
E.M.C.F.
Unit: 4B Cell #108
10641 HWY 80 West
Meridian, MS 39307

Plaintiff Appellant Chaz Pinkston, Pro Se

Dear Members of the Court:

This letter Reply is submitted on behalf of Chaz Pinkston Plaintiff/Appellant, pro se, in response to the brief of Appellees, Management & Training Corporation ("MTC"), Robert Marquardt, Robyn Williams, Jody Bradley, Gabriel Walker, Tonya Toomey, Terry Daniels, Justin Green, Karen Brown, Bryan Gaston, Delando Miles, John Gueho, Bessie McKnight, Chandra Hughey, Michael Johnson, Jacob Jones, Michael King, and Briana Chester.

## ARGUMENT

**A.** The district court improperly granted summary judgment due to Plaintiff's fully exhausting administrative remedies.

Plaintiff submitted the Grievance Detail report which proves that he did fully exhaust the available administrative remedies. Plus a sworn affidavit pointing out directly from that (document) how the Defendant(s) not only closed the grievance at the First Step but also rejected to answer/respond to the First Step at the facility not Richard Pennington as they continue to falsely claim.

Further, proof that the Grievance Detail report is truthful is none of these Defendant(s) has

not argued against nor challenged the authenticity of the document in accordance with the Rules 1001(4), 1003, Fed. R. Evid. See also U.S. v. Westmoreland, 312 F.3d 302, 311 (7th Cir. 2002).

All of these along with these Defendant(s) had withheld the Grievance Detail(s) plus the district court continuously denied Plaintiff direct discovery requests as well as Plaintiff followed the prison grievance policy exactly proves the district court "improperly granted summary judgment in favor of MTC Defendants".

Additionally, these MTC Defendant's not only withheld handing over the Grievance(s) Detail reports in order to add validity to their lie of Plaintiff grievance(s) being rejected for procedural defective ground during the screening phase, however, the Grievance Detail report shows the grievance was "accepted" during the screening phase and was sent to/assigned to a MTC staff member to respond at the First Step but that staff member rejected to answer and instead closed the grievance thereby preventing Plaintiff to proceed to the second step though allowing him to go directly to the Court for relief as there is no appeal to file once these things happen as the rejection is the First Step response!
The district court erred, 1 as the district

said that Plaintiff relief is beyond the power of MDOC to grant which is totally contrary to the what the MTC Defendants claimed as their defense plus contrary to all of the grievance documents submitted show as those documents "actually" show the little box next to beyond the power of MDOC to grant was literally unchecked though the tiny box next to beyond the power of A.R.P. to grant was checked solely as it was titled 'other'. See Exhibit-1. MTC Defendants just raised this argument on page 9 of their response so Plaintiff is replying to this.

The district court "overlooked" the fact that Plaintiff pointed out that the Grievance Procedures policy "never" specify(s) any type(s) of relief to state but just says to "state a relief."

The district court erred in saying Plaintiff's grievances failed to provide fair notice of the specific allegations which form the basis of Plaintiff's remaining claims. See Taylor v. Riojas, 5th Cir. No. 17-10253 (Nov. 2, 2020) The Supreme Court reversed the Fifth Circuit emphasizing that "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time."

The Taylor decision quotes Hope v. Pelzer, a 2002 decision which states that government officials who engage in "obvious cruelty" have fair warning their conduct unconstitut-



ional even if no prior case law exists with "identical factual circumstances." In Taylor, the Supreme Court clarified that this principle is still good law.

Lewis v. Doe, I., 840 Fed. Appx. 784 (5th Cir 2021) doesn't apply to Plaintiff's case just Jones v. Bock, and Woodford v. Ngo, 548 U.S. 81, 83-84 (2006) apply to this case.

In sum, Plaintiff did fully exhaust all his available administrative remedies and the district court improperly granted summary judgment with all inferences in the MTC Defendant's favor.

B.    The district improperly granted summary judgment as to Plaintiff's claims against Sgt. Michael Johnson.

As the record shows Plaintiff was assaulted on May 5th 2018 than May 10th 2018 than on May 15th 2018 by Sgt. Michael Johnson with injuries that lasted for days olve to the assaultive act's being worsened plus more emboldened each time with the final assaultive action being directly in view of not only subordinate plus same level colleagues but also more of his supervisor's watched and condoned such

Taylor v. Riojas 5th Cir. No. 17-10253 (Nov. 2, 2020)

The Supreme Court reversed the Fifth Circuit, emphasizing that "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time." See Exhibit-2.

The Taylor decision quotes Hope v. Pelzer, a 2002 decision which states that government officials who engage in "obvious cruelty" have fair warning their conduct was unconstitutional even if no prior case law exists with "identical factual circumstances." In Taylor, the Supreme Court clarified that this principle is still good law. See Exhibit-2.

The trial court incorrectly found that the alleged incidents were "not the type of egregious punishment that shocks the conscience of man Kind or otherwise invokes the protections of the Eighth Amendment." However, the Eighth Amendment standard "draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society." Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, (quoting Trop. v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590 (1958)); accord, Helling v. McKinney, 509 U.S. 25, 36, 113 S.Ct. 2475 (1993). See Exhibit-2.

The trial court also didn't consider the extent of Plaintiff's injuries and incorrectly found that he sustained

little if any actual injuries. The malicious and sadistic use of force, even without significant injury, is an Eighth Amendment violation; Hudson v. McMillian, 502 U.S. 1, 7-9, 112 S.Ct. 995 (1992); as is other treatment that unjustifiably inflicts pain or injury. See Wackenhut Corrections Corporation v. De la Rosa, 305 S.W.3d 594, 625-27 (Tex. App. 2009), Id.

The trial court further incorrectly found that a claim that handcuffs were tooo tight, without more does not amount to excessive force. However, the trial court completely disregarded Plaintiff's declaration plus the evidence of the grievance(s) filed that directly show that due to the handcuff's being too tight that Plaintiff circulation in his leg was cutoff and that Sgt. Michael Johnson with Lt. Bryan Gaston carried Plaintiff by way of the restraints causing all of them to completely tighten up around his other leg plus his wrists and they put him down as all of the restraints were then cutting/dug into his wrists plus ankles and pulled him down the hallway as he was in excrutiating pain and Sgt. Michael Johnson upon entering the zone began banging his head up against the wall causing his eye and lower forehead to swell like an orange (the size) and remain swollen and black for days plus weeks leaking pus while changing colors. Id. Hope v. Pelzer, 536 U.S. 730, 738, 122 S.Ct. 2508 (2002) (citing unnecessary pain caused by handcuffs and the restricted position of confinement in holding the "hitching post" punishment unconstitutional); or is humiliating or "antithetical to human

dignity"); Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S. Ct. 995 (1992)(holding "significant injury" need not be shown to establish an Eighth Amendment violation for use of force) or cause lasting or permanent harm; Jackson v. Cain, 864 F.2d 1235, 1247 (5th Cir. 1989); Foulds v. Corley, 833 F.2d 52, 55 (5th Cir. 1987)! See Exhibit-2.

In sum, the district court wrongfully granted summary judgment to these MTC Defendants.

C. The district court improperly granted summary judgment as to Plaintiff's visitation and First Amendment Claims.

The fact that the district court did acknowledge plus grant summary judgment to Plaintiff concerning the filthy cell conditions he was confined to coupled with the fact that he wasn't being allowed outdoor exercise; neither recreation as he was living in "maximum security" (which is already locked down seven days a week anyway) show his conditions without exercise or recreation posed a substantial risk of serious harm as such continued as the case for well-over 8 months. Id.

Regarding the Eighth Amendment, the courts have not said much about how these standards evolve. One court has stated that standards of decency in prison rise with society's ~~considers~~ standard of living. Davenport v. DeRobertis, 844 F.2d 1310, 1314-16 (7th Cir. 1988). In

cases involving risk to health or safety, courts must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the risk of which Plaintiff is complaining about is not one that today's society chooses to tolerate." See also Taylor v. Riojas 5th Cir. No. 17-10253 (Nov. 2, 2020)); However, judges are supposed to rely as much as possible on "objective factors" such as statues and not on their personal opinions about standards of decency. Rhodes v. Chapman, 452 U.S. at 346; Rodriguez v. McClenning, 399 F. Supp. 2d 228, 237-38 (S.D.N.Y. 2005) relying on trend toward statutory prohibition of sexual contact between prison employees and prisoners in holding that "any sexual assault of a prisoner by a prison employee constitutes cruel and unusual punishment."); Gonyer v. McDonald, 874 F. Supp. 464, 466 (D. Mass. 1995) (citing health code violations for asbestos; "With respect to prison health hazards, state health codes reflect established public attitudes as to what those standards [of decency] are."); Morales Feliciano v. Romero Barcelo, 672 F. Supp. 591, 617-19 (D.P.R. 1986) (weighing statutes in Eighth Amendment analysis). Conditions may violate the Eighth Amendment even if they do not violate state laws. McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990); In Eighth Amendment cases, courts inquire whether conditions, "alone or in combination,... deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. at

347 (emphasis supplied); accord, Surprenant v. Rivas, 424 F.3d 5, 19-20 (1st Cir. 2005) (holding jury could find the round-the-clock lock in, denial of hygenic products, limited water access, and multiple daily strip searches unconstitutional taken together, even if case law was "in some disarray" about those conditions individually).

Further, the Supreme Court has already ruled that visitation is a "right"! Overton v. Bazzetta, 539 U.S. 126, 131, 123 S.Ct. 2162 (2003). It has even titled it is "freedom of association" plus stipulated that "only" through disciplinary hearings may it be withheld for a limited time period.

The Supreme Court ruling is clear and direct. The standards of decency have evolved and so the Fifth Circuit (With All Due Respect) must evolve as it is obviously clear that Brady is no longer applicable as it is outdated with the times and society.

Either the Supreme Court is the law and can establish law or (With All Due Respect) the Supreme Court can be overruled and/or totally disregarded by the individual circuit's.

Additionally, if the Supreme Court (With All Due Respect) can be disregarded than so can the PLRA along with the entire Congress.

Finally, the MTC Defendant's never proved that there intereference and denying of his religious beliefs and

practices was reasonably related to legitimate penological interest. Id. The MTC Defendant's only argument is that the Defendant's had lockdown period's yet as the record shows Plaintiff was in "maximum security" which is always locked down so there doesn't exist "any" legitimate penological interest to deny Plaintiff religious rights especially with the Jehovah's Witnesses readily making themselves available at the prison front entrance with literature to give to Plaintiff. Id. None of the facility chaplain(s) were Jehovah Witnesses, they didn't have any Jehovah Witness literature, and they never got the literature from the Jehovah Witnesses who repeatedly came to the prison to study with the Plaintiff searched through it and brought it to Plaintiff. Id.

Also, to note the district did deny MTC Defendant Jody Bradley summary judment but than later reversed that decision on Reconsideration as the district court chose to weigh credibility and disregard Plaintiff's sworn declaration's and those of his fellow prisoners who were eye-witnesses. Id. Wilson v. Williams, 997 F. 2d 348, 350-51 (7th Cir. 1993) (rejecting district court's view that the plaintiff's affidavit's could not establish a material factual issue); Harris v. Ostrout, 65 F. 3d 912, 916-17 (11th Cir. 1995) (noting that the lower court had "overlooked" prisoners' affidavits).

As the record shows Plaintiff has already passed the four factors pursuant to Turner. Id. The Defendant Jody Bradley did not offer neither attempt

make nor entertain any alternatives that would have alleviated Plaintiff's just like allowing the Jehovah's Witnesses to be escorted to the maximum security cell were Plaintiff was housed to give him the literature plus provide spiritual guidance even for few minutes instead of Plaintiff having to leave the cell area and be escorted to them.

## CONCLUSION

The district improperly granted summary judgment and the motion for reconsideration (in part) to favor MTC Defendants. For the foregoing reasons, the district court's orders should be overturned and Plaintiff's appeal against them fully granted and reversed plus remanded back to the district court for trial.

## Reply Part II

The record before this Court is clear as the Trinity Defendant's never claimed in their summary judgment (as the district court noted) the exhaustion defense and therefore have forfeited their chance to during this appeal. See United States v. Zuniga, 860 F.3d 276, 284 n.9 (5th Cir. 2017) ("Failure to raise a claim to the district court 'constitutes forfeiture, not a waiver, of that right for the purposes of appeal.'")

(quoting United States v. Chavez-Valencia, 116 F.3d 127, 130 (5th Cir. 1997). The Trinity Defendant's quote cases were those Plaintiff's didn't respond yet Plaintiff has always responded. Id. The record clearly shows that the Trinity Defendant's did not raise the exhaustion defense as they would have claimed on the record, that Plaintiff failed to exhaust. It also shows that they did "not" raise it as an affirmative defense. See Exhibit-1.

The Trinity Defendant's rely heavily on Lewis v. Lynn and they quote many cases standing on Lewis, however that case doesn't apply to this case because (per the record) Plaintiff's case was not found to have "no cause of action" which is the sole reason this Court allowed the "inure" defense to apply to all of Defendant's in Lewis. This case was and is totally different. "Of course,...., each case must be judged on it's own facts." Rankin 5 F.3d at 107 n.6.

Additionally, now the Trinity Defendant's are openly requesting this High Court to go against the Federal Rules Of Civil Procedure Rule(s) 12(g)(2) and 12(g)(h)(1)(A) and (B), by now trying to raise and argue plus admit that even though they didn't raise it in the district court in their first/original summary judgment motion that they could have went and refiled it anyway. Or that this Court should accept and grant their refiling of it now just because the other Defendant's caught Plaintiff's mishap back in trial court. See Doc.# 183, 184, and 262 and 280!

These Replies are directly towards section's B, C, and D of the Trinity Defendant's Response Brief. In sum, Plaintiff seeks their response denied and the summary judgment "inure"

ruling by the district court reversed and remanded. See Doc.# 183, 184, 255, 256, 257, 275, 262, 280.

II. Trinity Defendant's were Not entitled to summary judgment because Plaintiff did create a genuine issue(s) of material fact(s) that Trinity Defendant's food service violated the Eighth Amendment.

1. First, this High Court doesn't have jurisdiction to rule on the merits of this case as the district court did not rule on them but dismissed Plaintiff's due to a de novo reason. Bender v. Williamsport Area School Dist., 475 U.S. 534, 541, 106 S. Ct. 1326 (1986); See also e.g., Arbon Steel & Serv. Co. v. U.S., 315 F.3d 1332, 1334 (Fed. Cir. 2003) (matters of constitutional interpretation receive plenary review); Boyle v. U.S., 200 F.3d 1369, 1371 (Fed. Cir. 2000) (whether court has jurisdiction and whether complaint states a claim are questions of law reviewed de novo). An appeals court must uphold a district court's factual findings unless they are "clearly erroneous" (as is the case in this case), which means that "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." U.S. v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525 (1948) (quoted in Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985); Plus using the wrong legal standard or an "abuse of discretion". See U.S. v. Taylor, 487 U.S. 326, 335-37, 108 S. Ct. 2413 (1988) (explaining abuse

Page 14 of 18

abuse of discretion standard); Coleman v. Gen. Motors Acceptance Corp., 296 F.3d 443, 446 (6th Cir. 2002) ("Abuse of discretion is defined as 'a definite and firm conviction that the trial court committed a clear error of judgment.'" (citation omitted)).

Second, the employer Trinity is liable because it's allowance and continuation of an informal policy and custom that caused Plaintiff's constitutional violation. See Exhibit-2. See Doc. # 275. See Exhibit-3. The Trinity Defendant's are saying that because they made menu's that such is enough to dismiss them from accountability. See Exhibit-1. However, Trinity Services Group, Inc., as well as Davis admit that Davis does "substitutions when she deems fit and has the authorization from Trinity Services Group, Inc., to do so whenever she deems appropiate". See Exhibit-1.

Also, the Trinity Defendant's claim that Plaintiff has never been permitted in the Kitchen but in actuality Plaintiff has been permitted into the Kitchen as a "maximum security" prisoner more than one time as he complained about the food to Defendant's Kitchen staff personally. Also, Trinity Defendant's have never shown competent nor sufficient evidence that Laura L. Donnelly, Trinity Regional Dietician (who wrote an affidavit in Trinity Services Group, Inc., behalf) has ever eye-witnessed the food being served to Plaintiff regarding the amount served and the unfit and cold·spoiled· rotten·old·molded·freezer-burnt condition of the food.

See Exhibit's 1-3. Plus neither of the Trinity Defendant's have disputed that Plaintiff sent "multiple" letter's to the Trinity Defendant's Headquarter's directly concerning his claims about the serious food problems repeated throughout his case. See Exhibit-3! See Exhibit's 1,2. See Taylor v. Riojas, 5th Cir. No. 17-10253 Nov. 2nd, 2020!

    The record shows that Trinity Services Group, Inc. and Deluittia Davis had "actual Knowledge plus constructive Knowledge" as Plaintiff's multiple letters and grievances were very detailed and precisely consistent plus pesistent with the serious wrongdoings that were occurring with the food problems at WCCF. The Trinity Defendant's never have disputed nor claimed that they even attempted to investigate neither correct any of Plaintiff's claims before nor during this litigation. All of which proves this is a consistent informal policy so common that it is well-settled as to constitute a custom that fairly represents municipal policy. See Farmer, 511 U.S. at 843; See Brown v. Budz, 398 F.3d 904, 914-15 (7th Cir. 2005) (holding deliberate indifference can be established by Knowledge either of a victim's vulnerability or of an assailant's predatory nature; both are not required); see also Wilson v. Seiter 501 U.S. 294, 300, 111 S.Ct. 2321 (1991) ("The long duration of a cruel prison condition may make it easier to establish Knowledge") (emphasis in original); Plaintiff endured these serious food problems well-over 2 years at WCCF. Gates v. Cook, 376 F.3d 323, 343 (5th Cir. 2004) (holding deliberate indifference finding supported

by "obvious and pervasive nature" of challenged condition 6).

Finally, Trinity Defendant's are acknowledging that Plaintiff's claims of weight loss are true because of his weight drop drastically throughout 2018 but are arguing that since he was overweight that it being due to the unfit food and food served in starvation ration's by them that they did him a favor. See Deberry #252396 v. Trinity Services Group, Incorporated et al. No. 1:2016cv0197-Document 4 (W.D. Mich. 2016)); Young v. Trinity Services Group, Inc. et al, No. 3:2019cv02465 (October 22, 2019)); Morales v. Trinity Services Group, Inc., et al, No. 2:2021mc00207-Document 12 (D. Kan. 2021)); Lyons v. Trinity Services Group, Inc., 401 F. Supp. 2d 1290 (S.D. Fla. 2005).

The existence of a municipal policy or custom may be inferred from the widespread character or knowledge generally of the practices in issue. Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995 ("deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or forestall further incidents"). These Trinity Defendant's admit that they did absolutely no investigation nor did they implement, supervise, and/or enforce formal policies, practices, and/or procedures to forestall anything. These Defendant's have never even claimed that they made any attempts to come to the "maximum security" unit and see the food issues much less even attempt to speak with Plaintiff about and to correct these serious food problems and unfit plus

unpalatable plus starvation food being sent to him from the Kitchen they operated during the over two year periods that he had to endure these things. See Exhibit's 1-3. See Doc.# 183, 184, 255, 256, 257, 262, 275! Board of County Commr's v. Brown, 520 U.S. 397, 407, 117 S.Ct. 1382 (1997)(quoting Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989); Lawson v. Dallas County, 286 F.3d 257, 264 (5th Cir. 2002) (noting that the Canton standard applies to municipal liability even where Farmer governs claims against individuals).

## CONCLUSION

Summary judgment was improperly granted on the basis of inure. There doesn't exist an issue regarding Plaintiff exhausting his administrative remedies as Trinity Defendant's did not raise nor argue it in the summary judgment and (per) F.R.C.P. Rules they cannot raise nor argue such now (also pursuant to Fed. R. App. P.,) Alternatively, summary judgment was and still is improper as there are genuine issues(s) of material fact(s) and genuinely disputed facts which have to be settled by a jury as Plaintiff requested a jury trial. Therefore, Plaintiff respectfully request this Court reverses the trial court and denies Defendant's response.

Date: August 26th, 2022

Name: Chaz Pinkston

Address: E.M.C.F.

Unit: 4 B C#108

10641 HWY 80 West

Meridian, MS 39307

Page 18 of 18

STATE OF MISSISSIPPI

COUNTY OF Lauderdale

## AFFIDAVIT

PERSONALLY, appeared before me the undersigned authority in and for the aforesaid

jurisdiction, being duly sworn by me does depose and state the following:

I, Chazi Pinkston , do hereby state that the following is true

and correct to the best of my belief and knowledge.

Today on August 29th, 2022 I have placed my Reply brief in prison staff hand to be mailed out today.

I.L.A.P. (Inmate Legal Assistance Program) staff member Casey Newell not only notarized this affidavit but also accepted it along with my Reply brief to be mailed out today, on August 29th, 2022!

So when the Court receives this documentation than it will be accepted as timely.

U.S. COURT OF APPEALS
RECEIVED
SEP 06 2022
FIFTH CIRCUIT

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

SIGNED, this the _29ᵗʰ_ day of _August_, 20_22_.

_Chaz Pinkston_
AFFIANT

SWORN TO AND SUBSCRIBED BEFORE ME, this the _24_ day of _Aug_, 20_22_.

_____
Notary Public

My Commission Expires: _Jan 18, 2025_

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 270020
CASEY NEWELL
Commission Expires
Jan. 18, 2025
LAUDERDALE CO.

Chaz PinKston #148934
E.M.C.F.
Unit: Medical Cell #S1b
10641 HWY 80 West
Meridian, MS 39307

$8.50 0
US POSTAGE
FIRST-CLASS
062S0009564697
FROM 39307
B45927.14

LEGAL MAIL

Approved Legal Mail
AUG 29 2022
EMCF: LEGAL LIBRARY

United States Court Of Appeals
Fifth Circuit
Office Of The ClerK
600 S. Maestri Place
New Orleans, LA 70130-3408